**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| United States of America ex rel.<br>   MARCEL WHITE,<br><br>                            Petitioner,<br><br>            v.<br><br>MICHAEL ATCHISON, Warden<br>   Menard Correctional Center,<br><br>                          Respondent. | No. 12 C 7347<br><br>Hon. Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Petitioner Marcel White brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is incarcerated at the Menard Correctional Center in Menard, Illinois, where he is in the custody of Michael Atchison, the warden of that facility. A jury convicted him of first degree murder, 720 ILCS § 5/9-1, and home invasion, 720 ILCS § 5/19-6 in 2005. He is currently serving a seventy-five year sentence. For the following reasons, White's petition is denied.

**FACTUAL BACKGROUND**

On May 8, 2002,[1] White (a.k.a. "Duke"), James Mitchell (a.k.a. "Pooh Butt"), and Christopher Peoples entered the apartment of Ninner Powers and her husband, Brian Campbell, to accuse Powers of selling drugs for a rival gang. (Dkt. No. 21-1 at p. 2–3.) They demanded that Powers give them the money she made from the sales. She told them she did not have any drugs or money. (*Id.*) Mitchell then gave the order to "pop" her and Peoples pulled a gun from

---
[1] The facts cited herein were established by the State court and are presumed true unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254; *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008).

1

his coat and pointed it at Powers. (*Id.*) Just then, Campbell came to the door, and Peoples shot him three or four times, killing him. (*Id.* at 3–4.)

Powers quickly grabbed her deceased husband's .38-caliber revolver from the floor and the three men fled. (*Id.* at 4.) When police arrived, Powers provided them with the nicknames and addresses of White and Mitchell (because she had known them for more than 20 years) and gave a description of Peoples. (*Id.* at 3–4.) Police later asked Powers to identify the men using some photographs and she was able to identify all three of them. (*Id.* at 4.)

A witness for the State, Antonio Rogers, testified that he knew Powers, and that on the night of the shooting, he saw White, Mitchell, and a third person standing on Powers's porch. (*Id.*) White stipulated that Rogers told Detective Timothy Nolan that he saw "the guy" "fiddling with something with his right hand" and that it looked like he was "trying to keep a gun from falling out of the coat pocket." (*Id.* at 5–6.) Rogers testified that he then saw the three men go inside, heard the gunshots, and saw the three men exit the building. (*Id.* at 4.) Rogers also testified that he heard White say to Mitchell that, "Chris [Peoples] just shot dude." (*Id.*) Powers then came running out of her building, screaming that her husband had just been shot. (*Id.* at 5.) Shortly thereafter, Rogers saw White leaving the scene in a car driven by his girlfriend. (*Id.*)

After three days, White, accompanied by counsel, turned himself in to the police. (*Id.* at 20.) Chicago Police Detectives Nolan and John Halloran interviewed White two times. (*Id.* at 5.) White's counsel was present for the second interview but not the first. (*Id.*) During the second interview, White admitted to going to Powers's residence to confront her about selling drugs in competition with his gang but denied going in. (*Id.*)

## PROCEDURAL BACKGROUND

White's trial began on April 12, 2005. (Dkt. No. 21-13 at p. 2.) He was convicted of first degree murder and home invasion on April 14, 2005, and on May 27, 2005 was sentenced to 50 years for the first degree murder conviction, 10 years for the home invasion conviction, and 15 years for the personal discharge of a firearm. (Dkt. No. 21-14 at pp. 130, 263.) White directly appealed his conviction on April 25, 2007, (Dkt. No. 21-2 at p. 1), and the Illinois Appellate Court affirmed on April 4, 2008. (Dkt. No. 21-1 at pp. 1–2.) White then filed for a petition for leave to appeal ("PLA") with the Illinois Supreme Court, which denied his request on September 30, 2009. (Dkt. No. 21-6.) On April 7, 2010, White filed a *pro se* petition for postconviction relief. (Dkt. No. 21-20 at pp. 8–12.) The trial court rejected his claims on July 2, 2010 as "frivolous and patently without merit." (*Id.* at 26.) He appealed the decision on August 3, 2010. (*Id.* at 27–29.) Counsel was appointed to represent White on appeal, who soon after filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). (Dkt. No. 21-7.) The appellate court granted the attorney's motion to withdraw and affirmed White's conviction on December 9, 2011. (Dkt. No. 21-9.) White did not file a PLA because he was allegedly "not told of the appellate denial in timely manner + [*sic*] was denied access to law library to file PLA." (Dkt. No. 1 at p. 3.)

White filed the present petition for a writ of habeas corpus on September 13, 2012 and presents four claims:

1. "Whether, under *Strickland*, when a defendant represented by counsel is first interviewed without counsel, but is then interviewed a second time with counsel present and counsel does not seek to suppress the defendant's contradictory first statement, then defendant's right to effective assistance of counsel has been violated;"

3

2. "The trial court hypothesized a guilty verdict that was never in fact rendered, in violation of the jury trial guarantee. The Illinois one good count rule, as applied in this case, establishes a conclusive presumption as to the knowledge and intent mental states for murder, and such a conclusive presumption as to a *mens rea* element of an offense is a violation of due process and the right to trial by jury;"

3. "Whether the State's use of other crimes evidence in the form of a photograph taken when a defendant was previously arrested may be introduced at trial;"

4. "Whether the State may argue in closing that the defendant's action of surrendering himself to police while accompanied by counsel 3 days after his alleged participation in the offense constituted consciousness of guilt."

## **DISCUSSION**

### I. Ineffective Assistance of Counsel

White argues that his counsel was ineffective for failing to suppress the first statement he made to police, which took place outside of the presence of his attorney. The State counters that the appellate court already ruled on this argument and that this Court should defer to that ruling because it reasonably and correctly applied United States Supreme Court law in reaching that decision.

A habeas petitioner raising a claim of ineffective assistance of counsel that was previously decided on the merits in state court (1) must satisfy the test for ineffective assistance mandated by *Strickland v. Washington*, 466 U.S. 668 (1984), and (2) the state court's decisions must fail 28 U.S.C. § 2254(d)'s deferential standard of review. *See Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Pole v. Randolph*, 570 F.3d 922 (7th Cir. 2009). Thus, a federal court is "doubly deferential" when reviewing a state court's judgment on an ineffective assistance of counsel claim. *See Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009); *Harrington*, 131 S.Ct. at 788. The *Strickland* standard demands that a petitioner prove both that his counsel's performance was objectively unreasonable and that he suffered prejudice as a result. *Strickland*,

4

466 U.S. at 687–88. To meet the prejudice component of the *Strickland* test, White must demonstrate "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If a petitioner fails to satisfy one of the *Strickland* elements, the other need not be considered. *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

In addition, Section 2254(d)'s deferential standard of review forbids granting habeas relief on a claim adjudicated on the merits in state court unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). A state court's application of federal law is unreasonable only if it strays "well outside the boundaries of permissible differences of opinion." *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)). A decision is contrary to federal law if it incorrectly expresses controlling Supreme Court precedent or, "having identified the correct rule of law, decide[s] a case differently than a materially factually indistinguishable Supreme Court case." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004). Accordingly, this Court will not grant habeas corpus relief on a claim adjudicated on the merits by a state court if there is any possibility that fair-minded jurists could disagree whether the state court's decision conflicts with Supreme Court precedent. *See Harrington*, 131 S.Ct. at 786.

### A. The *Strickland* Standard

The State argues that the appellate court applied the *Strickland* test correctly even though it omitted "reasonable probability" from the "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different" element when it recited the standard. *See Strickland*, 466 U.S. at 694. White does not contest that the appellate court applied the correct *Strickland* test in ruling that his counsel was not ineffective for failing to suppress White's first statement to the police. Nor could he. The appellate court twice cited *People v. Lopez*, 864 N.E.2d 726, 735 (Ill. App. Ct. 2007), which stated the correct *Strickland* test: "To establish prejudice, defendant must show there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." (Dkt. No. 21-1 at pp. 10, 26.) When a state court omits "reasonable probability" from the prejudice prong of the *Strickland* standard but cites to cases that do include that language and applies it correctly, its omission "does not render[] the decision 'contrary to' *Strickland*." *Sussman v. Jenkins*, 636 F.3d 329, 359–60 (7th Cir. 2011).

### B. Prejudice

Pursuant to *Strickland*, the state appellate court considered the prejudice prong of White's ineffective assistance of counsel claim first. *Strickland*, 466 U.S. at 697. The State contends that the state appellate court properly applied the *Strickland* standard and found that White was not prejudiced when his attorney did not suppress White's first statement to police. As mentioned above, to show prejudice, White must demonstrate a "reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake v. United States*, 723 F.3d 870, 879

6

(7th Cir. 2013). A "reasonable probability" means that the error was "sufficient to undermine confidence in [the trial's] outcome." *Id.*

The appellate court found White was not prejudiced by his trial counsel's conduct for two reasons. First, White's first statement to the police (made outside the presence of White's counsel) was less incriminating than the second statement (made when White's counsel was present). As such, it found that prejudice could only potentially arise from the State highlighting the inconsistency between the statements to the jury. But, second, the appellate court concluded that this inconsistency could have been highlighted by the State even without White's first statement to the police because the information contained in that statement was also admitted through the testimony of Powers and Rogers. This "eras[ed] any prejudice" to White. (Dkt. No. 21-1 at p. 27.)

White was not prejudiced by his trial counsel's failure to suppress White's first statement to the police. White's ineffective assistance of counsel argument is not that the factual content of his first statement to the police harmed his defense, but rather that the juxtaposition of the two conflicting statements he made to the police could undermine his credibility with the jury. The State highlighted the inconsistencies between White's first and second statements to the police two times, both during its rebuttal to White's closing argument. The first reference mentions the inconsistency to rebut White's argument in closing that he did not know Peoples before the night of the shooting. (Dkt. No. 21-14 at p. 217.) In the second reference, the State argues that White was "lying" to the police because the statements differ. (*Id.* at p. 225–26.) Although it is possible these credibility arguments impacted the jury's impression of White, the impact is minimal given the substantial weight of the evidence presented against him. This evidence included eyewitness testimony from Powers and Rogers, as well as White's own inculpatory

7

statement that he was a member of a gang and was present at Powers's apartment under the hostile premise of preventing her from dealing drugs in competition with his gang. Therefore, even if White's counsel suppressed the first statement and the State was unable to attack White's credibility in its rebuttal argument, the results of the trial would not have been different. *See Blake*, 723 F.3d at 879. Because White has failed to show he was prejudiced by his trial counsel's failure to suppress his first statement to the police, the Court finds his trial counsel was not ineffective and does not disturb the state appellate court's ruling.

II.     Illinois's "One Good Count" Rule

White also urges that Illinois's "one good count" rule violates his due process and jury trial rights. The State counters that the United States Supreme Court has already ruled that similar statutory provisions do not run afoul of due process in *Schad v. Arizona*, 501 U.S. 624 (1991). Illinois's "one good count" rule states that "where an indictment contains several counts arising out of a single transaction and a general verdict is returned, the effect is that the defendant is guilty as charged in each count to which the proof is applicable." *People v. Cardona*, 634 N.E.2d 720, 723 (Ill. 1994). And "when a defendant is charged in several counts with a single offense and multiple convictions have been entered, the 'one-act, one-crime' doctrine provides that judgment and sentence may be entered only on the most serious offense," and that the "less serious offense should be vacated." *People v. Smith*, 906 N.E.2d 529, 540 (Ill. 2009).

White was charged with first degree murder and home invasion. The judge provided the jury with four verdict forms, a "guilty" and "not guilty" form for each charge. (Dkt. No. 21-14 at pp. 160–61.) The judge also provided interrogatories to the jury to allow them to determine, upon a finding of guilt for first degree murder, whether White or someone for whom he was legally responsible used a firearm in the commission of the crime. (*Id.* at 161–62.) The guilty

verdict form for the first degree murder charge did not ask the jury to specify which of the three theories it used to convict White. (Dkt. 21-1 at p. 32.) The judge subsequently sentenced White to a prison term of 50 years for first degree murder, 15 years for personal discharge of a firearm, and 10 years for home invasion, to be served consecutively. (Dkt. No. 21-14 at p. 263.) Implicit in White's sentence is that it presumes (as required by Illinois Supreme Court precedent) that the jury convicted him of the most serious offense, intentional murder. This is true because a finding of felony murder would have prevented the judge from issuing a consecutive sentence for the underlying felony of home invasion in White's case. *See Smith*, 906 N.E.2d at 538 (stating that the predicate felony for felony murder cannot be the basis for a separate conviction or sentence, but that such a restriction does not apply to intentional or knowing murder).

In Illinois, a person is guilty of first degree murder "if, in performing the acts which cause the death: (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or (3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS § 5/9-1. Although there are three "types" of first degree murder enumerated in the statute, "first degree murder is a single offense" and the three "types" are "merely different ways to commit the same crime." *Smith*, 906 N.E.2d at 537. Applying the "one good count" rule to first degree murder, when a general verdict of guilty is returned, "the defendant is presumed to be convicted of the most serious offense—intentional murder—so that judgment and sentence should be entered on the conviction for intentional murder and the convictions on the less serious murder charges should be vacated." *Smith*, 906 N.E.2d at 540 (citing *People v. Davis*, 899 N.E.2d 238, 244 (Ill. 2008)).

9

In *Schad*, the Supreme Court held that "a general verdict predicated on the possibility of combining findings of what can best be described as alternative mental states, the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony" does not violate due process. 501 U.S. at 632. It added that, "We see no reason . . . why the [longstanding] rule that the jury need not agree as to mere means of satisfying the *actus reus* element of an offense should not apply equally to alternative means of satisfying the element of *mens rea*." *Id.* The Illinois "one good count" rule as applied to first degree murder fits squarely within this reasoning. The three "types" of first degree murder reflect the three different mental states the Illinois legislature sought to punish under that heading. Not requiring the jury to agree on a defendant's mental state does not violate the *Schad* Court's rule that alternative means can satisfy a crime's mental state element without violating due process.

That the use of a general verdict form led to a higher sentence for White because of the presumption in Illinois that a conviction under a general verdict form is a conviction under the most serious offense does not alter this Court's analysis. This is because the 50-year sentence White received for the first degree murder conviction and the 10 years he received for home invasion is within the 60 year maximum sentence he could have received for first degree murder. 730 ILCS 5/5-4.5-20; *see Abrams v. United States*, 250 U.S. 616, 619 (1919) ("We shall not need to consider the sufficiency . . . of the evidence introduced as to all of the counts of the indictment, for, since the sentence imposed did not exceed that which might lawfully have been imposed under any single count, the judgment upon the verdict of the jury must be affirmed if

the evidence is sufficient to sustain any one of the counts.").[2] The Court therefore finds that White's due process rights were not violated by the state court's application of the "one good count" rule in his conviction and sentencing.

## III. Due Process Claims

White also asks whether it was proper for the State to elicit testimony that suggests his photograph was pulled from a police database and then to argue separately in closing that turning himself in after three days accompanied by counsel is evidence of "consciousness of guilt." In so doing, White alleges no violations of any federal law or constitutional right, thereby invoking only state law questions of evidence. The State thus counters that these are questions of state law and are not cognizable under federal habeas corpus review. It also argues in the alternative that the claims fail on their merits because there was no statement that the photograph came from a police database, nor was there any argument in closing that White was *accompanied by counsel* when he turned himself in to police.

Errors of state law are generally not cognizable under federal habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citing 28 U.S.C. § 2241)). State law errors pertaining to the

---

[2] In 2009, the Illinois Supreme Court held that where "specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the defendant, specific verdict forms must be provided upon request and the failure to provide them is an abuse of discretion." *Smith*, 906 N.E.2d at 542. This ruling does not help White for two reasons. First, the *Smith* court specified that the specific verdict forms must only be provided "on request," and White did not request these forms at trial. Second, the case cannot retroactively apply to argue that White's trial counsel was ineffective for failing to make this request because doing so was not the law in Illinois until 2009, five years after White's trial. Even if the new law could be applied retroactively, the decision to make this request falls within the realm of trial strategy that courts are reluctant to question. *See, e.g.*, *People v. Calhoun*, 935 N.E.2d 663, 681 (Ill. App. Ct. 2010) (citing cases).

11

admission or exclusion of evidence are cognizable by a federal court considering a habeas petition if they violate due process, and such errors will only rise to that level if they are so serious that they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201–02 (1977)).

In *Perruquet v. Briley*, 390 F.3d 505, 509 (7th Cir. 2004), Perruquet was accused of stabbing his wife's alleged lover to death. At trial, he sought to enter evidence showing he acted in self-defense but was prevented from doing so when the trial court sustained the state's objection. *Id.* He was convicted of first degree murder and sentenced to life in prison. *Id.* at 510. The Illinois Appellate Court upheld the conviction, and the Illinois Supreme Court declined to hear his appeal. *Id.* He then filed a petition for a writ of habeas corpus, alleging the state court violated his due process rights. *Id.* The *Perruquet* court held that his claim was cognizable under federal habeas review because:

> The habeas corpus petition, along with the supporting memorandum that Perruquet filed, does more than merely cite his constitutional right to a fair trial. Perruquet has articulated the theory of self-defense that he wished to pursue; he has described the evidence (both excluded and admitted) that supported that theory; and he has argued that preventing him from pursuing the theory of self-defense likely resulted in the conviction of an innocent person. Whatever gaps there may be in his petition and supporting memorandum, the basic rationale of Perruquet's due process argument is readily discernible.

*Id.* at 512.

White's Claims 3 and 4 ask: "Whether the State's use of other crimes evidence in the form of a photograph taken when a defendant was previously arrested may be introduced at trial" and "Whether the State may argue in closing that the defendant's action of surrendering himself

to police while accompanied by counsel 3 days after his alleged participation in the offense constituted consciousness of guilt," respectively. He makes no mention of any federal law or constitutional violation. Although White does not expressly label Claims 3 and 4 "due process" violations, the Court construes *pro se* habeas corpus petitions liberally. *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997). However, unlike the petitioner in *Perruquet*, White does not "cite his constitutional right to a fair trial." Nor does he allege facts supporting an argument that "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," such as the deprivation of an entire affirmative defense to his crime. The Court therefore finds that White's Claims 3 and 4 are not cognizable on his petition for federal habeas corpus relief.

Even if the claims were cognizable due process violations, they would fail on the merits. *See Perruquet*, 390 F.3d at 512 ("By saying that Perruquet's claim is cognizable, we are not saying that it is necessarily meritorious. In that regard, one must draw a distinction between *claims* that are cognizable in habeas proceedings and *errors* that are cognizable. . . . Whether the errors that the trial court allegedly committed (if they were errors at all) indeed were of constitutional magnitude or were merely state-law errors could only be assessed based on a closer inspection of the underlying facts."). They are discussed in turn below.

    **C.**    **Photograph from Police Database**

For Detective Halloran's foundation for White's photograph (where he discussed its origin) to rise to the level of a due process violation, it must be so prejudicial that it denied White a "fundamentally fair trial" and "produced a significant likelihood that an innocent person has been convicted." *Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999). When the evidence in question pertains to "past crimes," White would have been denied a fair trial only if

the probative value of that evidence "is *greatly* outweighed by the prejudice to the accused from its admission." *Woodruff v. Lane*, 818 F.2d 1369, 1373 (7th Cir. 1987) (emphasis in original). Mere prejudice is not enough. *U. S. ex rel. Bleimehl v. Cannon*, 525 F.2d 414, 420 (7th Cir. 1975)

In *Bleimehl*, the defendant was convicted of strong-arm robbery based on a positive identification by one witness, the victim, who was first able to identify the defendant for police using a "mug book." *Id.* at 415–16. At trial, the defendant's counsel objected to admitting the mug book into evidence because it would imply the defendant had a criminal record. *Id.* at 416. Nevertheless, the trial court admitted the mug book into evidence, and no limiting instructions were given to the jury regarding permissible inferences that could be drawn from it. *Id.* The defendant was convicted, and his subsequent appeals to the Illinois Appellate Court and the Illinois Supreme Court were denied. *Id.* The federal district court granted the defendant-petitioner's writ for habeas corpus based, in part, on the admission of the mug book, but that decision was reversed by the Court of Appeals in *Bleimehl*. *Id.* at 415. As an initial matter, the *Bleimehl* court noted:

> [M]ug-shots are generally indicative of past criminal conduct, and will likely raise the inference of past criminal behavior in the minds of a jury. The double-shot picture, with front and profile shots alongside each other, is so familiar, from 'wanted' posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic. Admission of mug-shots, therefore, generally runs headlong into rules of evidence prohibiting the introduction of remarks or testimony regarding the petitioner's bad character or past criminal record.

*Id.* at 416–17. It therefore found that error "may" have been committed because the jury was not properly provided with limiting instructions, the photos contained references to the police

department, and the mug book alluded to the defendant's criminal past. *Id.* at 421. Nevertheless, the *Bleimehl* court held that this error did not greatly outweigh the mug book's probative value because the eyewitness being able to identify the defendant from a book containing 100 photos "disposed of" the insufficient identification defense put forth by the defendant. *Id.* at 421.

In White's case, the risk for prejudice was not outweighed by the probative value of the photo the police pulled from their database. Regarding the photo's prejudicial effect, it was not identified expressly as a "mug shot," nor was it provided to the jury in a book containing the photos of other criminals. Detective Halloran also did not mention that White was previously arrested or that he had a criminal record. *See Hayes v. Carter*, 2003 WL 21212598, at *15 (N.D. Ill. May 23, 2003) (finding no prejudice to the defendant when "mug shot" was relevant to the defendant's identity and the officer's foundational testimony only briefly mentioned the defendant was in a detained but did not refer to the photo as a "mug shot" or state that the defendant had prior arrests). Instead, Detective Halloran referred to a "computer database available to us," but made no mention as to the type of database. The jury could have reasonably concluded the photo came from a database containing driver's license information maintained by the Illinois Secretary of State's Vehicle Services Department. Even if the jurors suspected it came from an electronic "mug book" and that White had been previously arrested, the probative value far outweighs this prejudicial effect. Powers was one of two eyewitnesses to the crime—she was present when the victim, her husband, was shot and killed by Peoples. The credibility of her identification was a central to establishing White's guilt or innocence, lending considerable weight to its probative value. Therefore, White's Claim 3 also fails on the merits.

### D. Prosecutor's Closing Argument

White alleges his it was improper for the State to argue that White turning himself in after three days and in the presence of an attorney represented a "consciousness of guilt." The State replies that the "consciousness of guilt" argument did not mention presence of counsel and was appropriate under Illinois law.

The United States Supreme Court developed a standard to determine whether a prosecutor's statements in a closing argument rise to the level of a due process violation in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (en banc). First, "it is not enough that the prosecutors remarks were undesirable or even universally condemned;" instead, the comments must "infect[] the trial with unfairness." *Id.* A trial becomes infected with unfairness when the prosecutor's comments prejudice the defendant, a determination that can be reached after considering: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Ellison v. Acevedo*, 593 F.3d 625, 636 (7th Cir. 2010) (quoting Howard v. Gramley, 225 F.3d 784, 793 (7th Cir. 2000)). The fifth factor plays heavily in the analysis because strong evidence of guilt makes prosecutorial indiscretions during the closing argument less likely to prejudice the defendant. *Darden*, 477 U.S. at 182; *United States v. Gonzalez*, 933 F.2d 417, 432 (7th Cir. 1991).

In Illinois, a jury may consider evidence of flight as tending to prove guilt. *People v. Lewis*, 651 N.E.2d 72, 93 (Ill. 1995) (citing *People v. Herbert*, 196 N.E. 821, 825 (Ill. 1935)). Flight is properly argued when there is evidence that the defendant knew a crime had been committed and that he may be a suspect. *Id.* Here, the State presented evidence that White was

present when Campbell was shot and that the police informed his mother that they were looking for him. Having satisfied the requirement to argue flight as consciousness of guilt, the State argued in closing that White leaving the scene of the crime rather than, for example, waiting for the police to arrive to provide them with information, shows that White "knows he's guilty." It also argued that White turned himself in after having three days to think about the story he would tell police, that he had motivation to lie to the police, and that he turned himself in because he thought he could be the case and not because he was innocent and wanted to clear his name.

The State's closing argument makes no reference to White turning himself in accompanied by his attorney. Although White having an attorney with him when he turned himself in was in evidence, (*Id.* at 78–79), at no point—during closing argument or otherwise—was White implicitly criticized by the State for invoking his right to counsel. Even if the implication may have been faintly present, the trial court instructed the jury that, "The evidence which you should consider consists only of the testimony of the witnesses and the exhibits which the Court has received." (*Id.* at 139.) It also instructed the jury that, "Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." (*Id.* at 142.)

Instead, flight and "consciousness of guilt" were small portions of the State's closing argument. *See People v. McNeal*, 410 N.E.2d 480, 485 (Ill. App. Ct. 1980) ("The evidence of flight in this case was by no means overwhelming, but it was not relied upon by the State for any substantial portion of its case."). And the evidence against White was strong: eyewitness testimony placed him at the scene of an execution-style murder that arose over a dispute about

17

who could sell drugs to which gangs and where. Because the State's consciousness of guilt argument does not infect White's trial with unfairness and prejudice, the Court finds that the State's closing argument was not improper in this regard and that White's due process rights were not violated.

IV.     **Certificate of Appealability**

Unless this Court issues a certificate of appealability, an appeal may not be taken to the United States Court of Appeals from this Court's judgment in a habeas proceeding. *See* 28 U.S.C. § 2253(c); *see also Bolton v. Akpore*, 730 F.3d 685, 697 (7th Cir. 2013). The decision of whether or not to grant a certificate of appealability is a screening device used to conserve judicial resources and prevent the Courts of Appeals from being overly burdened with unmeritorious habeas corpus petitions. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1046 (7th Cir. 2001). Courts may only grant a certificate of appealability when the petitioner has presented "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Gonzalez v. Thaler*, 132 S.Ct. 641, 649 (2012). A substantial showing of the denial of a constitutional right requires the petitioner to show that reasonable jurists could find room to debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to entitle the petitioner to proceed further with his claims. *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

White's claims are denied on procedural grounds. When a court dismisses a petition on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. 485. "Where a plain

18

procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484. Here, it is indisputable that the state court properly decided Claim 1, Supreme Court precedent forecloses Claim 2, and Claims 3 and 4 are non-cognizable under habeas corpus review. Accordingly, White has failed to make a substantial showing of the denial of a constitutional right, and the Court denies him a certificate of appealability for the claims raised in his habeas petition. *See* 28 U.S.C. § 2253(c)(2); *see also Gonzalez*, 132 S.Ct. at 649.

## CONCLUSION

For the reasons set forth above, the Court denies White's Petition for Writ of Habeas Corpus and a certificate of appealability.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 4, 2013